**UNITED STATES of America,**
**Plaintiff–Appellant–Cross–Appellee,**

v.

**John H. WILLIAMS, Jr.,**
**Defendant–Appellee–Cross–Appellant.**

**Nos. 88–2827, 88–2843.**

United States Court of Appeals,
Tenth Circuit.

March 20, 1990.

Tony M. Graham, U.S. Atty., N.D. Okl. (Susan K. Morgan and Ron Wallace, Asst. U.S. Attys., with him on the briefs), Tulsa, Okl., for plaintiff-appellant-cross-appellee.

Joel L. Wohlgemuth of Norman, Wohlgemuth & Thompson (John E. Dowdell of Norman, Wohlgemuth & Thompson, James C. Lang and G. Steven Stidham of Sneed, Lang, Adams, Hamilton & Barnett, Tulsa, Okl., with him on the briefs), for defendant-appellee-cross-appellant.

Before McKAY, SEYMOUR, and MOORE, Circuit Judges.

McKAY, Circuit Judge.

In this case, the trial court dismissed, without prejudice, a seven count bank fraud indictment after concluding that the government wrongfully withheld from the grand jury information that was substantially exculpatory. The court held that the government's failure to disclose the exculpatory evidence rendered the grand jury's decision to indict "gravely suspect." The government appeals.

## I. FACTS

Defendant John H. Williams, Jr. is a businessman in Tulsa, Oklahoma. Between September 1984 and November 1985 defendant obtained loans and loan renewals from several banks in Tulsa. With each loan or renewal request, defendant presented the banks with two types of financial statements. The first type of financial statement, referred to as a "Market Value Balance Sheet," contained a category of assets called "Current Assets." The label "current assets" is a term commonly used to describe assets that will be realized in cash within one year, such as a receivable whose due date falls within the next twelve months. At the center of this case is a series of "Notes Receivable" that defendant listed under the "Current Assets" section of his "Market Value Balance Sheet." The "Notes Receivable" included notes amounting to between $5 million and $6 million receivable by defendant from several companies in which defendant had invested. Each of the companies was a rela-

tively new venture with negative net worth. Thus, the government claimed that the classification of the notes as "current assets" was misleading because the poor financial condition of the debtor companies rendered the notes uncollectible in the short term.

The other type of financial disclosure at issue was contained in defendant's "Statement of Projected Income and Expense." One source of income listed on this statement was interest income payable on the notes receivable discussed above. The government alleged that due to the poor financial condition of the debtor companies, any interest accruing on the notes could only be paid to defendant with money loaned to the companies by defendant himself. Thus, according to the government, the disclosure of interest income was misleading because banks were likely to believe that the interest was a source of outside income to defendant.

After a six-month investigation, defendant was indicted for defrauding a bank in violation of 18 U.S.C. § 1014 (1982). The indictment charged defendant with seven counts of alleged material false statements and the willful overvaluation of notes, assets, and interest income. Defendant then filed a motion to compel the government to disclose any evidence that tended to exculpate defendant. In response, the government indicated it would comply with its continuing duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by providing any exculpatory evidence. At the hearing on defendant's motion, defendant claimed there was a discovery dispute because the government had not provided any *Brady* material. The government, after being ordered to provide any exculpatory material, agreed to provide defendant with edited portions of the grand jury transcript and to submit the unedited transcript to the court.

After reviewing the grand jury transcript, defendant filed a motion to dismiss the indictment, claiming that the grand jury's decision to indict was suspect because "the Government failed to present substantial exculpatory evidence to the

Grand Jury." Record, vol. 1, Doc. 46. The evidence on which defendant based his argument consisted of defendant's ledgers, tax returns, and financial statements, all of which tended to show that defendant had consistently accounted for the notes receivable and interest the same way he presented them to the banks. In addition to the financial records, defendant claimed that the government had in its possession, but failed to produce, a five-volume deposition given by defendant in an earlier bankruptcy proceeding. According to defendant, the deposition testimony contained explanations of defendant's methods of accounting and financial reporting that would have exonerated him. After a hearing, the district court denied defendant's motion.

Subsequently, a hearing was held on several pretrial motions, at which time defendant entered a motion to reconsider the earlier motion to dismiss the indictment. On reconsideration, the court found that the government had possessed substantially exculpatory information that was not presented to the grand jury. The court stated that the evidence "raises reasonable doubt about the defendant's intent to defraud," because it "indicate[s] a lawful basis for the information provided to the banks." Record, vol. 1, Doc. 85, Order, November 7, 1988, at 8. The court held that the absence of this evidence rendered the grand jury's indictment "gravely suspect" and dismissed the indictment without prejudice. *Id.* at 8–9.

The government appeals from the district court's finding that the government withheld substantially exculpatory evidence from the grand jury. In the alternative, the government argues that the remedy of dismissal was inappropriate. Defendant agrees with the district court's dismissal, but claims that the indictment should have been dismissed with prejudice.

## II. DISCUSSION

### A. Exculpatory Evidence

The district court's finding that the government withheld exculpatory evidence is a finding of fact. "Questions of fact are reviewed under the deferential, 'clearly er-roneous' standard as set forth in Fed.R. Civ.P. 52(a). Although the standard is a rule of civil procedure, it is applied to certain issues in criminal proceedings." *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Lone Star Steel Co. v. United Mine Workers*, 851 F.2d 1239, 1242 (10th Cir.1988).

■ We have previously held that a prosecutor has the duty to present substantial exculpatory evidence to the grand jury. *See United States v. Page*, 808 F.2d 723, 728 (10th Cir.1987). Although we do not require the prosecutor to "ferret out and present every bit of potentially exculpatory evidence," *id.*, we do require that substantial exculpatory evidence discovered during the course of an investigation be revealed to the grand jury. *Id.* Other courts have also recognized that such a duty exists. *See, e.g., United States v. Flomenhoft*, 714 F.2d 708, 712 (7th Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984); *United States v. Ciambrone*, 601 F.2d 616, 622–23 (2d Cir.1979); *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610, 620 (N.D.Okla.1977). This requirement promotes judicial economy because "[i]f a fully informed grand jury cannot find probable cause to indict, there is little chance the prosecution could have proved guilt beyond a reasonable doubt to a fully informed petit jury." *Page*, 808 F.2d at 728.

■ The indictment contains seven counts alleging bank fraud against the defendant under 18 U.S.C. § 1014 (1988). Section 1014 makes it a crime for someone knowingly to make a false statement concerning a material fact to a financial institution for the purpose of influencing the

financial institution's action. The substance of the indictment alleges that defendant knowingly overvalued his current assets to obtain approvals and renewals of various loans. Although count two involves oral representations, all of the offenses charged allege that overvaluations were made by the defendant in his financial statements, income statements, or projected income statements. The overvaluations alleged by the government concern the value and/or classification of income (including interest income), collateral, and notes receivable.

One essential element of the offense for which defendant was indicted is the intent to influence the bank's action by the use of a false statement. *See United States v. Smith*, 838 F.2d 436, 439–40 (10th Cir. 1988); *United States v. Bonnette*, 663 F.2d 495, 497 (4th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 666 (1982). Although we recognize the burden of proof for conviction at trial is greater than the finding of probable cause by the grand jury, the presentation of the government's case to the grand jury must be based upon the essential elements of the offense.

The government argued below and on appeal that "under its theory" of the case, it presented all relevant evidence. The government claims that because the tax returns, general ledgers and depositions were not relevant, they cannot be considered exculpatory. The district court found that this evidence was substantially exculpatory because it supported a lawful basis for the information provided as opposed to the intent to defraud. In so doing, the district court separated the withheld evidence into two categories as follows:

(1) written material generated in the bankruptcy proceedings involving defendant and his wife. This material included defendant's deposition in bankruptcy adversary proceedings in which he explains his balance sheet, income statement, the method of their preparation, and his beliefs regarding asset values assigned, as well as a discussion by the defendant of his venture capital invest-

ments and statements to bankers regarding those investments; and (2) financial statements, tax records, and general records of the Defendant prepared by Defendant and his accounting firm over a period of years.

Record, vol. 1, Doc. 85, Order, November 7, 1988, at 5–6. We now discuss the district court's findings with respect to each category.

### 1. *Bankruptcy Materials*

The government subpoenaed certain written materials generated in an adversary bankruptcy proceeding, including a deposition of defendant. Defendant claimed that the deposition contained exculpatory material and that it should have been presented to the grand jury. Further, because the government submitted a proposed designation of certain testimony from the deposition for use at trial, defendant argues that the government conceded that the deposition was relevant. The government argued, however, that the deposition testimony was self-serving and irrelevant, and therefore it could not be considered substantially exculpatory.

After reviewing the material generated in the bankruptcy proceedings the District Court stated:

An examination of Defendant's deposition and the exhibits to the deposition reveals substantial exculpatory material. The Defendant explains his balance sheets and income statements in detail, the method of their preparation, and his beliefs with regard to the asset values assigned. The deposition also contains significant discussion by Defendant of his venture capital investments and statements made to banks regarding those investments. Without the benefit of Defendant's testimony before the grand jury this written material would be highly useful to the grand jury in evaluating Defendant's intent.

Record, vol. 1, Doc. 85, Order, November 7, 1988, at 85. In holding the bankruptcy deposition should have been presented to the grand jury, the court recognized a distinction between "calling a target of a

grand jury investigation," which often results in self-serving statements, and "presenting sworn testimony on the issues presented to the grand jury when that sworn testimony is available." Record, vol. 6, at 4. In our review of defendant's deposition we have found explanations regarding the accounting methods used to prepare the financial statements. Although these explanations may seem irrelevant and self-serving under the government's theory of the case, the grand jury must receive any information that is relevant to any reasonable theory it may adopt. For example, it would have been reasonable in this case for the grand jury to adopt a theory under which defendant contemplated a different definition of "current assets" than the government. Under such a theory, defendant's explanations would have been relevant in that they would tend to show that defendant did not intend to influence the banks' actions. We conclude, therefore, that the district court was not clearly in error when it found that the deposition testimony was exculpatory.

### 2. *Financial Records*

The government subpoenaed the general ledgers and tax records covering the years 1984 and 1985 from defendant's accounting firm. While urging the court to reconsider the motion to dismiss, defendant argued that the general ledgers "prove up item by item the statement of income/expense just like the tax returns did," therefore the consistency in reporting his financial condition negated the defendant's intent to defraud. Record, vol. 5, at 138. Defendant contended, therefore, that the general ledgers were exculpatory evidence and that the government's withholding of these documents affected the grand jury's decision to indict. *Id.*

After reviewing the general ledgers, tax records and financial statements the district court stated:

> The statements as to income and expenses on the financial statements at issue in the indictment were drawn from these ledgers, which were also used to prepare Defendant's tax returns. This written material reveals a consistent format of reporting over a period of years and consistency in the figures reported from form to form. If the government had presented to the grand jury this information within its possession, the grand jury would have been aware that the Defendant's inclusion of interest income on the financial statements at issue was consistent with the general ledgers maintained by [the accounting firm] with Defendant's federal income tax returns and with Defendant's bank statements. Likewise, the grand jury would have been aware that the Defendant, with the assistance of [the accounting firm], presented figures as to note balances which comprised the notes receivable portion of the financial statements that was consistent with the face value of the notes on the general ledgers.

Record, vol. 1, Doc. 85, Order, November 7, 1988, at 7–8. We have examined the financial statements that formed the basis of the indictment. These financial statements contain a legend at the bottom of the first page of each particular document. The legend is noted by an asterisk that reads: "Marketable securities and certain investments have been adjusted to reflect fair market on (date of statement). All other assets are reflected at cost or other tax basis." Record, vol. 2, at Exhibits A, B, and C. The particular current assets that the government alleges were knowingly overvalued did not contain the asterisk legend. Therefore, the reader of the financial statements would be aware that the value for income, collateral, and notes receivable were at cost or other tax basis. In addition, the legend put the banks on notice that defendant's financial statements were not prepared in accordance with Generally Accepted Accounting Principles. Thus, a grand jury could reasonably conclude that: (1) defendant understood a different meaning of "current assets" than the government or the banks; and (2) because of the different meanings of "current assets" contemplated by the parties, defendant likely did not intend to mislead the banks.

The district court had the benefit of reviewing the grand jury transcript and all of

the evidence in the possession of the government. Our review has been limited to the designated record which contains various pleadings, transcripts of hearings before the district court, and the defendant's deposition taken in the bankruptcy proceedings. The government claims that all relevant portions of this evidence were presented to the grand jury through the testimony of witnesses. In its brief, the government requests "this Court to review the grand jury transcripts ... and satisfy itself of the accuracy of the government's position." Government's Response, April 5, 1989, at 9. However, the government did not designate the grand jury transcript as a part of the record before us. If we had the benefit of reviewing the grand jury transcript, our review of the deposition's exculpatory evidence may have lead to a different conclusion. Nevertheless, we conclude that the explanations regarding the classification of the notes as well as their valuation in the financial statements are consistent with the possible theory that defendant simply did not intend to mislead the banks. We cannot say that the district court's finding that the deposition contained exculpatory evidence was clearly erroneous.

## B. Indictment

■ Having concluded that the government withheld substantial exculpatory material from the grand jury, we must now consider (1) whether the district court was correct in finding that defendant was prejudiced, and (2) whether the district court abused its discretion by dismissing the indictment.

### 1. *Prejudice to Defendant*

The purposes of the grand jury require it to be both independent and informed in order to render a decision free from bias. *See Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). The grand jury serves to "clear the innocent, no less than to bring to trial those who may be guilty." *United States v. Dionisio,* 410

U.S. 1, 16–17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973) (footnote omitted). The grand jury also acts as "a protector of citizens against arbitrary and oppressive governmental action." *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). "To be independent and informed, the grand jury must be able to obtain all relevant evidence, since only then can its judgment truly be informed." *United States v. Flomenhoft,* 714 F.2d 708, 711 (7th Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984) (citations omitted).

Applying the above-quoted principles, we have held that an indictment can be dismissed only when prosecutorial misconduct results in "some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Pino,* 708 F.2d 523, 530 (10th Cir.1983). The Supreme Court recently held that "a District Court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). In *Nova Scotia,* the court announced the following standard that courts should apply whenever dismissal is sought for a nonconstitutional error.

> The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless.

*Id.* 108 S.Ct. at 2378. This standard was first articulated in *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945–46, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring), and was based on the decisions in *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986), and *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Although some errors or violations can be remedied at trial,[1] "where an

---

1. Earlier cases have held that some errors can be remedied at trial, and do not warrant a

dismissal. *See, e.g., United States v. Page,* 808 F.2d 723, 727 (10th Cir.1987); *Talamante v.*

unremedied violation is proved, the trial judge must still be satisfied that the violation resulted in grand jury intimidation or improper influence ... and thus had a 'substantial influence' on the indictment returned, or that there is grave doubt as to whether it had such effect." *Mechanik,* 475 U.S. at 78, 106 S.Ct. at 946 (*citing Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248).

In the present case, the district court reviewed all the disputed evidence and concluded that the deposition, tax records, general ledgers and financial statements revealed a consistent format of reporting that "indicate[s] a lawful basis for the information Defendant provided to the banks, as opposed to any indication of intent to defraud those banks." Record, vol. 1, Doc. 85, Order, November 7, 1988, at 8. The government argues that the withheld evidence was adequately discussed before the grand jury and that providing the material would have been a fruitless gesture. Further, the government argues that the grand jury "would not have known or understood the relevance of [the documents] without knowing the theory of the case." Government's Response, April 5, 1989, at 8. As we have already noted, the purpose of the grand jury is to render an unbiased, independent, and informed decision based on all relevant evidence. Consequently, the government's theory of the case is not critical. The finding of intent to commit a criminal act is a determination the grand jury must make in deciding whether probable cause exists. Here, the district court found that the failure to present evidence relevant to the critical issue of intent rendered the indictment suspect. We cannot say, based on our review of the record, that this finding was clearly erroneous.

### 2. *Dismissal Without Prejudice*

As a final matter, we must examine the propriety of the district court's dismissal of the indictment without prejudice. Our standard of review is to determine whether the district court abused its discretion. *See*

*Romero,* 620 F.2d 784, 790–91 (10th Cir.1980), cert. denied, 449 U.S. 877, 101 S.Ct. 223, 66

*United States v. Strayer,* 846 F.2d 1262, 1265 (10th Cir.1988); *United States v. Derr,* 726 F.2d 617, 619 (10th Cir.1984). Based on the above review of the district court's findings, we conclude that the court did not abuse its discretion in granting defendant's motion to dismiss the indictment. Further, despite defendant's request for dismissal with prejudice, we hold that the district court was correct in dismissing the indictment without prejudice "so that the government can, ... again, if it elects, present the matter to the grand jury for determination of probable cause." Record, vol. 6, at 5. The more drastic remedy of dismissal with prejudice would not be justified under these circumstances.

## III. CONCLUSION

After reviewing the record, we hold that the district court was not clearly erroneous when it found that the government withheld substantial exculpatory material from the grand jury. Based on this error by the government, the district court correctly found that the absence of the withheld evidence prejudiced defendant before the grand jury rendering the grand jury's indictment suspect. Consequently, the district court did not abuse its discretion when it granted defendant's motion to dismiss the indictment. Finally, we hold that under the circumstances, the district court properly dismissed the indictment without prejudice.

**AFFIRMED.**

L.Ed.2d 99 (1980) (perjured testimony before grand jury).