5 F.3d 548
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William E. SHERMAN, Defendant-Appellant.
 No. 92-2197.
 United States Court of Appeals, Tenth Circuit.
 Aug. 20, 1993.
 
 Before LOGAN, TACHA and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 Background
 
 1
 The United States Forest Service received an anonymous telephone call informing them that Defendant-appellant William Sherman had removed artifacts from an Indian ruin site within the Gila National Forest. Sherman had been the subject of numerous telephone complaints and reports alleging illegal excavation. Sherman was also associated with other individuals actually found and arrested on the site, having purchased land together for the purpose of removing archeological artifacts located on the property. Agents also noted that vehicle tracks similar to those going to and from various archeological sites in the National Forest and the particular site in question were found leading to Mr. Sherman's residence.
 
 
 2
 Before applying for a search warrant and ostensibly for the purpose of obtaining a more accurate description of Mr. Sherman's home, agents contacted the New Mexico Department of Game and Fish. Officer Hugh Bishop, a District Wildlife Officer with the state agency visited Mr. Sherman's residence in uniform and driving a marked vehicle. Officer Bishop testified that the trip was the result of dual purposes; that is, he had intended to re-establish an informant relationship and, at the same time, help the Forest Service by providing a description of the outbuildings on Mr. Sherman's property. During his visit, Officer Bishop observed several artifacts and was able to develop the layout of Mr. Sherman's residence as requested by the Forest Service agents.
 
 
 3
 Thereafter, a Forest Service agent applied for a search warrant. In his affidavit, the agent stated that he had learned from a "concerned citizen," identified during the suppression hearing as Officer Bishop, that Mr. Sherman possessed certain artifacts. The search warrant was issued and executed, allowing officers to seize the artifacts described by Officer Bishop.
 
 
 4
 Mr. Sherman was indicted for unlawful removal of archeological resources (16 U.S.C. 470ee(a) & (d)) and pled not guilty. He also filed a motion to suppress, arguing that Officer Bishop's identity should have been revealed in the affidavit. After an evidentiary hearing, the district court denied the motion. The government served notice that it intended to use evidence that Sherman and his tools had been seen by hikers in 1988 at the excavation site. Although the government contended that the evidence was admissible both under Fed.R.Evid. 404(b) and to impeach Mr. Sherman's statements made to Forest Service agents that he had no knowledge of this particular site, Mr. Sherman objected. This evidence was also admitted by the district court.
 
 
 5
 Following a verdict of guilty, Mr. Sherman appeals, alleging error in the failure to suppress evidence seized pursuant to the illegal warrant and in allowing the testimony of the hikers. Our jurisdiction arises under 28 U.S.C. 1291 and we affirm.
 
 I. The Search Warrant
 
 6
 Mr. Sherman argues that the officers acted in bad faith by contacting the state agency and sending Officer Bishop to gather certain information. This initial bad faith was compounded, the argument continues, when Officer Bishop was identified in the search warrant affidavit only as a "concerned citizen." Such bad faith on the part of the officers could amount to a Fourth Amendment violation. United States v. Leon, 468 U.S. 897 (1984).
 
 
 7
 The district court found it unnecessary to reach the question of whether or not the officers had acted in contravention of the Fourth Amendment when Officer Bishop visited Mr. Sherman. The court noted that, even if a violation had occurred, the remedy would be a redaction of the illegally obtained information from the affidavit. Franks v. Delaware, 438 U.S. 154 (1978). Even if the information provided by Officer Bishop were removed from the affidavit, the district court was of the opinion that sufficient probable cause remained to issue the warrant.
 
 
 8
 First, we are not persuaded that a Fourth Amendment violation occurred. It is not clear that the affiant engaged in a material misrepresentation by failing to identify the "concerned citizen" as Officer Bishop. See United States v. Page, 808 F.2d 723, 728 (10th Cir.), cert. denied, 482 U.S. 918 (1987). The information was not erroneous; perhaps we could best term it "incomplete." We certainly do not suppose that the cooperation of state and federal authorities amounts to "bad faith." United States v. Langston, 970 F.2d 692, 698-99 (10th Cir.1992), cert. denied, 113 S.Ct. 439 (1992).
 
 
 9
 Furthermore, the materiality of the incomplete description of the informant is minimal. If the failure to identify the informant had any effect, it would likely detract from his credibility and thus subjected the statement to a higher scrutiny. Indeed, it would have bolstered the credibility of the information and been more helpful to the affiant to have identified the source of the information. The fact that the magistrate was able to conclude that probable cause existed, given an unidentified informant, speaks to the strength of the balance of the warrant. We therefore agree that the one sentence in which information from the "concerned citizen" was relayed was of negligible value to the sum of the affidavit. See United States v. Brown, 984 F.2d 1074, 1078 (10th Cir.1993) (although one sentence was overbroad, it could be isolated and the remaining portions of the warrant were sufficient to establish probable cause). The information received during anonymous phone calls and the tracks of the vehicle remain for the magistrate's consideration, as well as other statements concerning the condition of the site and reports of similar activity by Mr. Sherman.
 
 II. Evidence of Prior Digging
 
 10
 The trial court admitted the testimony of the hikers who had confronted Defendant digging at the ruin in 1988 under Fed.R.Evid. 404(b). Defendant argues that the government was not specific as to the exception within 404(b) relied upon and that the district court took a shotgun approach in admitting the evidence. We disagree.
 
 
 11
 The district court decided "to admit the evidence both under 404(b) and the impeachment purpose that you have described, on the assumption that you are going to have testimony to the effect that he denied knowledge of this site, his presence there." R. 8. This statement certainly convinces us that the district court allowed the evidence to specifically counter Defendant's anticipated claim of no knowledge concerning the site. Later the judge indicated that the evidence had bearing on other factors listed in Fed.R.Evid. 404(b), R. 8-9, but this does not detract from the specificity of the earlier determination.
 
 
 12
 Defendant points out that the hikers' testimony was offered and admitted for impeachment purposes as well. Because he did not testify at trial, Defendant now argues that the testimony of the hikers could not possibly be used to impeach him. However, as was made clear to the court before trial, the evidence would "contradict the statements that he [Defendant] made as part of an interview that he had with Special Agent Smith." R. 7. Defendant's statement was introduced through the testimony of Agent Smith, R. 73, 75, and no objections were raised; indeed, Defendant's statement was clearly admissible. See United States v. Clemons, 676 F.2d 122, 123 (5th Cir.1982) (citing United States v. Evans, 572 F.2d 455, 488 (5th Cir.1978), cert. denied, 439 U.S. 870 (1978)); United States v. Barletta, 652 F.2d 218, 219 (1st Cir.1981). The testimony of the hikers contradicted Defendant's assertion that he was unfamiliar with the area where the ruins were located and was admissible for that purpose as well.
 
 
 13
 Finally, based on the record before us, we are unable to determine whether any limiting instructions were requested as to the testimony of the hikers. If not, we would rely on Fed.R.Evid. 105, which establishes that testimony admissible for one purpose shall be allowed and a limiting instruction issued if requested. If the Defendant fails to request a limiting instruction, the testimony is admitted for the one proper purpose so long as its probative value outweighs the prejudice to the defendant. Consequently, our holding may rest alternatively on either independent purpose cited by the judge.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3