**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lloyd Michael REID,
Defendant–Appellant.**

No. 89–5158.

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1990.

Jack Marwood Short, Tulsa, Okl., for defendant-appellant.

James L. Swartz, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Before McKAY and BALDOCK, Circuit Judges, and KANE, District Judge.[*]

BALDOCK, Circuit Judge.

Defendant-appellant Lloyd Michael Reid was convicted of conspiracy to distribute

---

[*] The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

cocaine and maintain a place for drug distribution. 21 U.S.C. § 846. He appeals, claiming that 1) the indictment should have been dismissed because the grand jury was not apprised of the complete criminal record of the government's lead witness, 2) the indictment should have been dismissed or a motion for new trial granted because the government's lead witness testified to an absence of an agreement, contrary to the government's earlier representation of potential favorable treatment, and 3) the district court misapplied the Sentencing Guidelines in imposing a 200 month sentence when it decided upon a) the quantity of drugs involved, b) an upward adjustment for obstruction of justice, c) an upward adjustment concerning the defendant's role in the offense, and d) the defendant's criminal history category. We affirm.

Viewing the record in this case in the light most favorable to the government, we summarize the facts. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). The government's lead witness, Rhonda Grimmett, was approached by codefendant Ronald Noble about letting defendant Reid sell cocaine in her apartment. Grimmett then met with Noble, Reid and codefendant Patrick Willis. Reid and Grimmett reached an agreement whereby Reid would use Grimmett's apartment for crack cocaine distribution in exchange for cash and drugs that she could resell. Defendant Reid made arrangements with drug suppliers (Irving Profitt and Alvin Clemmons) and had Ronald Noble contact Reid's customers to inform them of the new location. Patrick Willis served as Reid's bodyguard. Grimmett, Reid, Noble and Willis were armed during the three-week life of this venture, in which one-hundred customers per day purchased crack cocaine. Grimmett estimated that approximately one ounce per day of cocaine was converted into rock crack. As much as $2,500 per day was realized.

## I.

■ Defendant first argues that the indictment should have been dismissed because the grand jury was not apprised of the complete criminal record of Rhonda Grimmett. An FBI agent who appeared before the grand jury indicated that Grimmett pled guilty and was sentenced to twenty years in state court for her role in this drug distribution scheme. Defendant suggests that the government was under a duty to establish before the grand jury that Grimmett was a reliable witness. Defendant maintains that the government should have investigated and fully disclosed Grimmett's numerous felony convictions and other nefarious activities. According to the defendant, the fifth amendment indictment clause incorporates all of the prerequisites of the fourth amendment warrant clause and this means that a full criminal history of a witness must be presented to the grand jury to enable it to evaluate the reliability of the evidence provided.[1]

Thirty-four years ago, the Supreme Court squarely rejected the notion that the Court in its supervisory capacity should "establish a rule permitting defendants to challenge indictments on the grounds that they are not supported by adequate evidence." *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). Defendant's argument that the fifth amendment somehow incorporates a reliability test under the fourth amendment is flawed in two respects. First, under the fourth amendment, whether probable cause to issue a warrant exists depends upon the totality of the circumstances; reliability of an informant is one of several factors which may inform a probable cause determination. *Illinois v. Gates,* 462 U.S. 213, 230, 238, 103 S.Ct. 2317, 2328, 2332, 76 L.Ed.2d 527 (1983). Second, the Supreme Court has determined that evidence obtained in violation of the fourth amendment

---

1. Neither counsel for the defendant nor counsel for the government cited *any* Supreme Court authority on appeal, save defendant's letter containing cites to supplemental authority. While the failure to discuss Supreme Court authority is understandable when the Court has not spoken to an issue, we remind counsel that the Supreme Court is the primary source of decisional law in our federal system. As inferior federal courts, both the court of appeals and the district court turn first to the decisions of the Supreme Court.

and suppressed may nonetheless be used by a grand jury. *United States v. Calandra,* 414 U.S. 338, 354–55, 94 S.Ct. 613, 622–23, 38 L.Ed.2d 561 (1974).

In this circuit, we have adopted a rule that "although a prosecutor need not present all conceivably exculpatory evidence to the grand jury, it must present evidence that clearly negates guilt." *United States v. Page,* 808 F.2d 723, 727 (10th Cir.), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987). Under this rule, "[t]he prosecutor is not obliged to ferret out and present every bit of potentially exculpatory evidence. But when *substantial* exculpatory evidence is discovered in the course of an investigation, it must be revealed to the grand jury." *Id.* at 728 (emphasis in original). This court has affirmed a trial court's dismissal of an indictment without prejudice when the government withheld substantially exculpatory evidence and the government's conduct prejudiced the defendant. *See United States v. Williams,* 899 F.2d 898, 903–04 (10th Cir. 1990) (applying *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263–64, 108 S.Ct. 2369, 2378–79, 101 L.Ed.2d 228 (1988)).

Although impeachment evidence can constitute exculpatory evidence entitled to juror consideration, *Davis v. Alaska,* 415 U.S. 308, 315–18, 94 S.Ct. 1105, 1109–11, 39 L.Ed.2d 347 (1974); *United States v. Buchanan,* 891 F.2d 1436, 1443 (10th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990), this case is readily distinguishable from *Williams.* At trial, the defendant sought to impeach witness Grimmett with her lengthy criminal history. *See Williams,* 899 F.2d at 903, n. 1 (recognizing that some omissions before the grand jury can be cured at trial); *Page,* 808 F.2d at 727 (jury was informed of lack of authenticity of certain evidence and the evidence would not have affected grand jury's probable cause determination). Moreover, Grimmett's complete criminal record is not evidence which would have negated defendant's guilt. *See Page,* 808 F.2d at 727. The grand jury was apprised of her most relevant conviction, the one resulting from the events in question. We conclude that defendant cannot meet the difficult burden of showing that the government's failure to disclose Grimmett's complete criminal history had any affect on the grand jury's decision to indict. *See Bank of Nova Scotia,* 487 U.S. at 263, 108 S.Ct. at 2378. Rather, requiring the government to produce and disclose such history after it had already disclosed the current conviction would be to announce an approach requiring "the prosecutor to ferret out and present every bit of potentially exculpatory evidence" to the grand jury, a standard condemned in *Page.* 808 F.2d at 728.

## II.

Defendant next contends that the indictment should have been dismissed or a motion for new trial should have been granted because Rhonda Grimmett testified to an absence of an agreement between herself and the government. In May 1989, the government informed the defendant of its assurances to Grimmett that her cooperation would be made known to her sentencing judge in state court. At trial in June 1989, Grimmett testified that no agreement had been made with the government for her testimony. The government stressed this fact in its closing argument.

When the government has reached an agreement with a principal witness in exchange for her testimony, the government has a responsibility to inform the defendant of that fact. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). If the witness denies such an agreement, and the government allows it to go uncorrected, a defendant may be denied due process. *Napue v. Illinois,* 360 U.S. 264, 269–70, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959). Here, however, the district court made a finding that although the government initially indicated an agreement, the state court sentencing judge was never contacted on Grimmett's behalf. Rec. supp. vol. I at 4. Defendant has offered no evidence to undercut this finding.

Defendant suggests that he was denied a fair trial because his trial strategy was destroyed. According to the defendant, he had planned to discredit Grimmett's testimony based upon her agreement with the government, but ended up strengthening her credibility on cross-examination when she denied that she expected the government to intercede on her behalf after her testimony. *See* rec. vol. II at 37–38. Defendant also contends that, had he known of the changed circumstances, he might have inquired of the Oklahoma Department of Corrections as to whether Grimmett's federal cooperation would reduce her state sentence.

■ Having indicated an agreement, the government should have disclosed the lack of an agreement to the defense in advance of trial. *Cf.* Fed.R.Crim.P. 16(c) (government has a continuing duty to disclose discoverable information). However, the failure to do so in this case is not reversible error. Although the defendant claims his trial strategy was destroyed, we agree with the district judge that the defendant suffered no prejudice. Rec. supp. vol. I at 6–8. Defense counsel thoroughly questioned Grimmett about her numerous convictions and prior bad acts. He had knowledge that Grimmett would deny the presence of any agreement on cross-examination because she had done so forcefully on direct. Thus, counsel made a knowing and tactical choice to press the point and the fact that he did not like the answer he received should not affect our judgment. We are in agreement with the trial judge's observations that defense counsel would have asked the question regardless of the government's representation and defendant was not prejudiced by the government's tardy disclosure of the lack of an agreement. Defendant's representation that he might have pursued further investigation of Grimmett had he known about the lack of an agreement is wholly speculative and, in the complete absence of a showing of prejudice, need not be considered.

## III.

■ Defendant next claims that the district court misapplied the Sentencing Guidelines. *See* United States Sentencing Comm'n, *Guidelines Manual* (Nov. 1989). At the district court, the government bears the burden of proof for sentence increases while the defendant bears the burden of proof for sentence decreases. *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990). We review the district court's findings of fact which support its application of the Guidelines under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir.1990), *petition for cert. filed*, No. 89–7490 (May 15, 1990). The district court's resolution of contested legal issues is reviewed *de novo*. *Id.*

### A.

■ Defendant first objects to the district court's determination of the quantity of drugs involved. The presentence report relied upon Grimmett's testimony that for twenty-one days, at least one ounce of cocaine was processed into rock crack and sold for a total of 595.35 grams of cocaine.[2] Defendant's base offense level was 26, which is appropriate when greater than or equal to 500 grams but less than 2,000 grams of cocaine are involved in the conspiracy. *See* U.S.S.G. §§ 2D1.4(a); 2D1.1(a)(3) & (c) (drug quantity table).

The district court could consider the entire quantity of cocaine sold during the three weeks the conspiracy operated at Grimmett's apartment. Section 2D1.4 of the Guidelines provides that "[i]f a defendant is convicted of a conspiracy ... involving a controlled substance, the offense level shall be the same as if the object of the conspiracy ... had been completed." Here, the defendant was convicted only of a conspiracy count, but all drug transactions relied upon by the district court had been completed.

When several defendants are convicted of conspiracy, the relevant conduct for pur-

---

2. One ounce equals 28.35 grams. U.S.S.G., Measurement Conversion Table at 2.50 (Nov. 1989);

*Rutter*, 897 F.2d at 1560 n. 1. Thus, 21 ounces times 28.35 grams equals 595.35 grams.

poses of sentencing "is not necessarily the same for every participant." U.S.S.G. § 1B1.3 comment. (n. 1) (referenced in *id.* § 2D1.4 comment. (n.1)). "Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level...." *Id.* Thus, a defendant is accountable for drug quantities associated with a conspiracy provided that such quantities were within the scope of, and reasonably foreseeable in connection with, the criminal activity he jointly agreed to undertake with his coconspirators. U.S.S.G. § 1B1.3, comment. (n. 1). (illus. e). Here, the entire quantity of cocaine purchased for resale and then sold from Grimmett's apartment was within the scope of and reasonably foreseeable in connection with, defendant's agreement with his coconspirators.

■ Determining the entire quantity of cocaine is slightly more difficult.

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.4, comment. (n. 2); *see also id.* § 2D1.1 comment. (n. 12). Drugs are bought and sold in secrecy. Drug dealers do not obey the law, much less generally accepted accounting principles which would dictate detailed financial and other records. Though it would be helpful to determine the quantities involved, few, if any, drug dealers make use of source documents reflecting the inflow and outflow of their inventory. In the absence of a seized quantity, we are left with reconstructions by DEA agents and others concerning the quantities involved. Given several plausible estimates as to replicated quantities, the quantity determined by the district court must rest upon a preponderance of the evidence. *United States v. Walton,* 908 F.2d 1289, 1300–03 (6th Cir.1990).

The district court determined that the quantity contained in the presentence report was a "reasonably accurate" replication of the amount sold by this drug enterprise. Defendant argues that a better estimation would have been 100–199 grams. According to the defendant, the district court should have begun its estimate with the 10.86 grams of crack cocaine seized from the defendant and then added three one-half ounce quantities (42.525 grams) which defendant purchased from a supplier, Alvin Clemmons. Again, according to the defendant, given this figure of 53.385 grams, the district court should have then added an amount to arrive at a total of between 100–199 grams.

In estimating the quantity of cocaine involved in this drug conspiracy, the district court should consider evidence concerning inflows and outflows of drug inventory. *See* U.S.S.G. § 2D1.1, comment. (n. 6) ("Where there are multiple transactions ... or multiple drug types, the quantities of drugs are to be added."); *see also id.* (n. 12). Essentially, defendant is suggesting that we look at the amount seized plus amounts he purchased from his suppliers (inflows) and add some arbitrary amount. The district court focused solely on the amount of cocaine sold by the defendant (outflows). Neither approach is correct.

Defendant's method presents several problems. Clemmons testified that he made seven to nine different sales of varying quantities to defendant and, at a minimum, he sold defendant 106.05 grams of cocaine and perhaps as much as 138.075 grams. *See* rec. vol. II at 60–63. Thus, adding the amount seized to these quantities, we would start with a quantity of between 116.91 and 148.935 grams. But, Clemmons was not defendant's only supplier. Defendant's suggestion that we merely cap the amount involved at 199 grams also ignores the amount sold from Grimmett's apartment. The defendant's method

must be rejected as incomplete and arbitrary.

The district court's method of estimation, calculating the amount of cocaine sold by the defendant and others during the course of the conspiracy, does not consider the record evidence concerning the amount of cocaine seized from the defendant plus the amount the defendant purchased. *See* U.S.S.G. § 2D1.1, comment. (n. 6). Although the district court's method of determining the amount sold was an acceptable approach which finds support in the record testimony, it is incomplete absent some reason to disregard the evidence concerning the amount seized from the defendant and the amounts purchased by him. This error does not affect the sentence, however, because even adding the maximum amount which the evidence indicates was seized and purchased for resale by the defendant to the district court's finding of the amount sold during the course of the conspiracy does not change the defendant's base offense level.[3] On remand, the district court shall append its amended findings concerning the quantity to the presentence report.[4]

**B.**

The district court made a two-level upward adjustment for obstruction of justice.

3. The district court found that 595.35 grams were sold resulting in a base offense level of 26. The maximum amount which the record supports as being seized from and purchased for resale by the defendant is 148.935 grams. Adding the amount seized, purchased for resale and sold results in a total of 744.285 grams, which is well within the 500 but less than 2,000 gram quantity which would result in a base offense level of 26.

4. We note that the presentence report does not include an attachment containing the findings on disputed matters as required by Fed.R. Crim.P. 32(c)(3)(D). On remand, the district court should perform this ministerial task. *United States v. Wach*, 907 F.2d 1038, 1041 (10th Cir.1990).

5. U.S.S.G. 3C1.1 provides:

*Willfully Obstructing or Impeding Proceedings* If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.[5] A non-exclusive list of conduct which may provide a basis for applying § 3C1.1 includes "threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly." U.S.S.G. § 3C1.1 comment. (n. 1(d)). The district court relied upon a statement in the presentence report that the probation officer had reviewed an affidavit by a BATF agent which reportedly contained an inmate's statement that the defendant had threatened two trial witnesses over a four to five day period subsequent to conviction.[6] The defendant allegedly stated "that he had put a 'hit' on [two of the witnesses who testified against him] and that when he was released, he was going to take care of it." Rec. supp. vol. II, addendum at 2. According to the presentence report, the inmate contacted one of the witnesses, who in turn contacted the government. The government then investigated and provided the affidavit to the probation office. Defendant denies the statement, claims that it lacks any indicia of reliability and notes that he was unable to cross-examine the inmate.

■ The statement at issue is plainly multiple hearsay.[7] Recognizing that a de-

6. Threatening a witness before the witness testifies and prior to conviction and sentencing plainly is within the scope of § 3C1.1. *United States v. Rivera*, 879 F.2d 1247, 1253–54 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). Threatening a witness after the witness testifies and subsequent to conviction, but prior to sentencing, also is within the scope of § 3C1.1, which applies "during the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1; *see United States v. Lee*, 899 F.2d 15 (6th Cir.1990) (unpublished text of decision available on Westlaw) ("the language 'during the investigation or prosecution of the instant offense' does not exclude the time period after entry of a plea but before sentencing").

7. Four statements are involved: (a) the probation officer stated (b) that the BATF agent stated (c) that the inmate stated (d) that the defendant stated that he would get revenge. Even assuming statement (c) incorporating (d) constitutes an admission by the defendant under Fed.R. 801(d)(2)(A), statements (a) and (b) are hearsay. *See* Fed.R.Evid. 803(8)(B), 805; 4 J. Weinstein &

fendant has a due process right not to be sentenced on the basis of materially incorrect information, *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), we have held that some minimal indication of reliability must accompany a hearsay statement, other than mere allegation, before it may be relied upon in sentencing. *United States v. Beaulieu,* 893 F.2d 1177, 1181 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990); *see also* U.S.S.G. § 6A1.3, comment. (backg'd) (reliable hearsay may be considered). But no sixth amendment right of confrontation applies at sentencing when the district court considers evidence from sources that are unavailable for the defendant to cross-examine. *Beaulieu,* 893 F.2d at 1180–81.

■ In determining relevant facts, the district court may consider affidavits. U.S.S.G. § 6A1.3, comment. (backg'd). Out-of-court statements from unidentified informants also may be considered, provided good reason exists for not revealing the identity of the informant and the statements may be corroborated otherwise. *Id.* (citing *United States v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978)). Applying these standards, the challenged statement has sufficient indicia of reliability to be considered. The informant was aware of the witnesses by name which suggests a likelihood that defendant was the source of the threat. *See United States v. Penson,* 893 F.2d 996, 998 (8th Cir.1990). The informant contacted not the government, but one of the threatened witnesses. Only when the witness complained to the government did the government become involved. The statement is also consistent with the defendant's total denial of involvement in drug distribution given overwhelming evidence to the contrary; according to the defendant, he came to Tulsa to start a "rap music" group. *See* U.S.S.G. § 3E1.1, comment. (n. 4) ("Conduct resulting in an enhancement under § 3C1.1 (Willfully Obstructing or Impeding Proceedings) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.").

## C.

Defendant next challenges a four-level upward adjustment under § 3B1.1(a) for an aggravating role in the offense. U.S.S.G. § 3B1.1(a). The defendant contends that only four participants were involved and that § 3B1.1(a) is inapplicable. That section provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). The district court relied upon the presentence report which suggested that more than five persons were involved because two of the defendant's suppliers, (Clemmons and Profitt) should be counted, as well as an estimated daily one-hundred customers who purchased cocaine from the defendant. The presentence report goes too far.

■ To determine the number of participants involved in the offense we are cognizant that a participant "is a person who is criminally responsible for commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 comment. (n. 1). The defendant is included among the participants in the offense. *United States v. Barbontin,* 907 F.2d 1494 (5th Cir.1990); *United States v. Preakos,* 907 F.2d 7 (1st Cir.1990). Key determinants of the applicability of § 3B1.1 are control or organization: "the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms 'organizer, leader, manager and supervisor,' each of which suggests the presence of underlings or subordinates." *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990); *accord* U.S.S.G. 3B1.1 comment. (n. 3). We recently have held that the defendant's role is considered only in relation to the offense of conviction, we do not look at all relevant conduct. *United*

M. Berger, *Weinstein's Evidence,* ¶ 805[01] (1988 & 1990 Supp.).

*States v. Pettit,* 903 F.2d 1336, 1341 (10th Cir.1990).

■ Here, the offense of conviction encompasses all of the drug distribution activities within the course of the conspiracy, the retail portion being conducted at Grimmett's house. The record establishes that the defendant recruited Grimmett, and controlled her along with Willis and Noble. Thus, including defendant, at least four persons are participants in the offense.

We next turn to whether defendant's two identified suppliers and one-hundred unidentified customers should be counted as participants under § 3B1.1. Section 3B1.1 attempts to apportion relative responsibility when an offense involves multiple participants. U.S.S.G. § 3B1.1, comment. (backg'd). In most organizations, responsibility means accountability. We have held that pursuant to § 3B1.1(c) "the defendant's supervisory or managerial status is not sufficiently proved by indicating a mere buyer/seller relationship between the defendant and the alleged group or network participants." *United States v. Mays,* 902 F.2d 1501, 1503 (10th Cir.1990). *A fortiori* a defendant's status as an organizer or leader is not sufficiently proven merely by showing that defendant purchased drugs from a supplier or sold drugs to a customer for his personal use. Before a supplier or customer for personal use may be deemed to have been a "controlled" participant under § 3B1.1(a),[8] the government must prove at least an interdependence between the defendant and the supplier or customer that would support an inference that the supplier or customer for personal use is answerable to the defendant. Merely because a crime is extensive (several purchases and sales of drugs) does not automatically mean that a defendant organizes or leads his suppliers or his customers who buy for personal use. *See United States v. Weidner,* 703 F.Supp. 1350, 1355 (N.D.Ind. 1988) (cited in *Mays,* 902 F.2d at 1503), *aff'd,* 885 F.2d 873 (7th Cir.1989).

Applying this test to the facts, we hold that the government has not shown that defendant organized or led five or more participants, based upon the partial record designated on appeal. Regarding the two suppliers, we have adequate information to evaluate the defendant's relationship vis-a-vis supplier Clemmons, but very little information concerning supplier Profitt. As noted, Clemmons testified that he made seven to nine different sales of varying quantities to defendant. He knew the defendant only for a short period of time, having become acquainted with him when the defendant requested cocaine for his distribution. *See* rec. vol. II at 60. Clemmons assumed that the defendant was reselling the cocaine. *Id.* at 63. Although the defendant presumably called Clemmons to order cocaine on more than one occasion, the record is silent as to any type of interdependence between Clemmons and the defendant which would justify an inference that the defendant somehow exercised control over Clemmons. Clemmons testified that he had sold cocaine for two years prior to his involvement with the defendant. The other supplier, Profitt, apparently worked for Clemmons and no evidence suggests that defendant controlled Profitt. Nor can the government successfully assert that the defendant organized or led his one-hundred customers as participants. The customers are completely unidentified and, without more, such a result is foreclosed by our recent decision in *Mays.*

■ Absent five controlled participants, § 3B1.1(a) may still apply if the criminal activity is "otherwise extensive." U.S.S.G. § 3B1.1(a). The district court stressed that the defendant was most culpable, led an extensive criminal organization, and likely would not have stopped until detection or the participants' desire for wealth was satisfied. Rec. vol. VI at 11. The application note indicates that "[i]n assessing whether an organization is 'otherwise extensive,' all

---

8. Although a participant is defined as one "criminally responsible for the commission of the offense" U.S.S.G. § 3B1.1, comment. (n. 1), and more than one leader or organizer of a criminal association may exist, *id.* at (n. 3), we believe

that application of § 3B1.1(a) requires some control, directly or indirectly, by the defendant over the five participants if the criminal activity is not "otherwise extensive." *See* U.S.S.G. § 3B1.1(a).

persons involved during the course of the entire offense are to be considered." U.S.S.G. § 3B1.1(a) (n. 2). Thus, persons involved in the offense, other than controlled participants, may be considered. In illustrating what the term "otherwise extensive" means, the application note further provides "a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." *Id.* Likewise, we hold that a drug conspiracy which involved the defendant and three subordinates (four participants directly or indirectly controlled by the defendant), and relied upon the knowing services of at least two drug suppliers to supply hundreds of customers over a three-week period likewise could be considered extensive. Although we agree with the defendant that only four controlled participants were involved, we hold that this defendant was an organizer or leader of a criminal activity that was extensive under § 3B1.1(a).

### D.

 Defendant next disputes his criminal history computation. In June 1986, while a juvenile, defendant was sentenced to community placement for his cocaine possession and distribution activities, not to exceed five-years. He was placed in Camp Kilpatrick for thirty-four weeks and was released on supervised probation in February 1987. The instant offense occurred in January 1989. Defendant does not dispute the two-level score for a "juvenile sentence of confinement of at least sixty days" where "the defendant was released from such confinement within five years of his commencement of the instant offense." U.S.S.G. §§ 4A1.1(b) & 4A1.2(d)(2)(A). Rather, he questions an additional two-points for committing the instant offense within two years after his release. *Id.* § 4A1.1(e).

According to the defendant, he should have been released in November 1986, but stayed at Camp Kilpatrick to finish the basketball season as team captain. The presentence report indicates that when a juvenile is confined at Camp Kilpatrick, the juvenile and the institution develop a case plan and contract. Rec. supp. vol. II, addendum at 3. A point system is used in which a juvenile may acquire points and move up his release date. *Id.* Those participating in sports tend to acquire points more rapidly, but as a condition of sports participation, a juvenile must agree to complete the sports program, even if sufficient points are acquired prior to the end of the season. *Id.* at 3–4. The district court determined that nothing in the guidelines permitted him to consider an earlier possible release. Rec. vol. VI at 12. We resolve this point on the ground stated in the presentence report, namely, the defendant was required to complete the sports season as a condition of his participation in the camp— it was not a voluntary arrangement. Accordingly, defendant was released in February 1987 and committed the instant offense within two years of that time.

The district court's judgment is AFFIRMED and the case is REMANDED so the district court may attach its findings concerning disputed matters to the presentence report.