968 F.2d 22
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Alexander Scott WILLIAMS, Defendant-Appellant.
 No. 91-2183.
 United States Court of Appeals, Tenth Circuit.
 June 11, 1992.
 
 Before MCKAY, Chief Circuit Judge, JOHN P. MOORE, Circuit Judge, and EISELE, Senior District Judge.*
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Defendant Alexander Scott Williams appeals the sentencing decisions of the United States District Court for New Mexico on his conviction for aiding and abetting and conspiracy to violate 21 U.S.C. §§ 841(a)(1), (b)(1)(B); 18 U.S.C. § 2--conspiracy to knowingly, intentionally, and unlawfully distribute more than 100 kilograms of marijuana. Defendant challenges the district court's determination of his role in the conspiracy and the court's drug quantity calculation, arguing he is entitled to a decrease of two levels in his base offense level. In addition, he asserts he was not a "manager" under U.S.S.G. § 3B1.1(c).
 
 
 2
 We review application of the sentencing guidelines for errors of law de novo, United States v. Reid, 911 F.2d 1456, 1461 (10th Cir.1990), cert. denied, 111 S.Ct. 990 (1991), and the factual determinations of the trial court using a clearly erroneous standard. Id.; United States v. Easterling, 921 F.2d 1073, 1077 (10th Cir.1990), cert. denied, 111 S.Ct. 2066 (1991). We hold the district court applied the guidelines incorrectly in determining marijuana quantity for Mr. Williams, and should have set Mr. Williams' offense level two levels lower at 26. We affirm the court's factual determination defendant was a "manager" under U.S.S.G. § 3B1.1.
 
 I.
 
 3
 The U.S. Customs Service orchestrated an undercover drug operation in which codefendants of Mr. Williams agreed to purchase 960 pounds of marijuana from Customs agents. Numerous meetings and conversations between agents and Mr. Williams' codefendants occurred from June 29, 1990, to July 13, 1990. Several codefendants agreed on July 8, 1990, to be "fronted" 272 pounds of lower grade marijuana, and to buy 678 pounds of high grade marijuana at $650 per pound. On July 11, codefendant Enrique Pinedo told an agent he was having trouble finding buyers for the transaction. The next day Mr. Pinedo stated the deal would go through and showed the agent a suitcase of money. On July 13, 1990, Mr. Pinedo informed the agent all the money had arrived. The agent and Mr. Pinedo made plans to meet in El Paso, Texas.
 
 
 4
 Defendant Williams had been contacted several days before by David Thornton, a potential partner in a real estate venture and codefendant in this conspiracy. Mr. Thornton had informed Mr. Williams that Thornton was $50,000 short of putting together a transaction to buy approximately 700 pounds of high grade marijuana. Mr. Williams agreed to contribute the $50,000 and to let Mr. Thornton use his rented Ryder truck in the deal. Mr. Williams then contacted a longtime friend, Ralph Bryant, to deliver the truck to El Paso. Defendant flew to El Paso, rented a car, and met Mr. Pinedo on July 13, 1991. This was defendant's first meeting with Mr. Pinedo. Defendant also met Mr. Bryant with the Ryder truck, and arranged for Mr. Pinedo to drive the rented car to meet the other coconspirators while Mr. Williams and Mr. Bryant rode together in the truck.
 
 
 5
 On meeting the government agents, Mr. Pinedo identified Mr. Thornton as his buyer and stated defendant Williams was accompanying Mr. Thornton. There was no evidence to contradict Mr. Williams' assertion that prior to July 13, his only contacts were with defendants Thornton and Bryant. There is also no evidence contradicting his Statement of Guilt, (summarized in R. III, doc. 254, 6), that he understood the scope of the transaction to comprise the purchase of 678 pounds of high quality marijuana, and was not aware of a separate deal involving 272 pounds of compressed marijuana. Mr. Williams' only contact with the conspiracy was through Mr. Thornton. There is no evidence Mr. Thornton knew about any other deal except that involving the 678 pounds of high quality marijuana. Mr. Williams, Mr. Thornton, and Mr. Bryant were arrested with the other coconspirators at the site of the transaction on July 13.
 
 
 6
 Defendant Williams was indicted with numerous codefendants on August 16, 1990, in a single count indictment for conspiracy to distribute marijuana. Defendant initially pled not guilty but changed to a conditional guilty plea on April 15, 1991. He objected to the Presentence Report, and the government filed a response. An addendum was added, to which defendant filed a response. The district court set defendant's offense level at 28, using a quantity determination of 960 pounds of marijuana, a two level adjustment for being a manager, and a criminal history category of I, and sentenced Mr. Williams to seventy-eight months' imprisonment, four years' supervised release, and assessments for the cost of imprisonment and supervised release.
 
 II.
 
 7
 In United States v. Reid, 911 F.2d at 1462, we stated "a defendant is accountable for drug quantities associated with a conspiracy provided that such quantities were within the scope of, and reasonably foreseeable in connection with, the criminal activity he jointly agreed to undertake with his coconspirators. U.S.S.G. § 1B1.3, comment. (n. 1)." Application Note 1 to U.S.S.G. § 1B1.3, Relevant Conduct (Factors that Determine the Guideline Range ), states:
 
 
 8
 In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.
 
 
 9
 (emphasis added). While the government is correct that the court in Reid sentenced the defendant according to the entire quantity of cocaine associated with that conspiracy, the Reid court found the defendant should reasonably have foreseen the scope of the entire conspiracy. Reid, 911 F.2d at 1462.
 
 
 10
 In this case, it is not clearly established defendant Williams had any indication, or should have known, of a deal involving an additional 272 pounds of compressed marijuana being sold to coconspirators with whom he had no contact. Reid and U.S.S.G. § 1B1.3 require that the relevant conduct on which sentencing is based be confined to the scope of the defendant's agreement in the conspiracy. A defendant's agreement may coincide with the entire amount of a drug transaction, or the scope of the agreement and what is reasonably foreseeable may be more limited. Each case must be decided upon its own facts.
 
 
 11
 Here the district court considered the collective conduct of all the conspirators and the total amount of marijuana involved in the arrest on July 13 in determining Mr. Williams' base offense level:
 
 
 12
 I believe it is clear that under the law of this circuit, and this one case in particular, United States v. Reed (sic), [911 F.2d at 1436], the entire quantity of drugs involved in a conspiracy that reasonably should have been known to the defendant, or foreseeable to the defendant, should be included in the base offense level.
 
 
 13
 I believe that the probation officer in this case, based on all the information provided, correctly concluded that the total quantity that should have been reasonably foreseeable to the participants in the conspiracy was the 960 pounds of marijuana that was used to determine the base offense level, so I will [approve] the determination of the probation officer....
 
 
 14
 R. XII, 26-27 (emphasis added).
 
 
 15
 The district court thus made no distinction between the scope of Mr. Williams' agreement and that of his coconspirators. As a late entering coconspirator, defendant should only have been sentenced for quantities he knew or should have known the conspiracy would distribute. See, e.g., United States v. Matthews, 942 F.2d 779, 784 (10th Cir.1991); United States v. Williams, 897 F.2d 1034, 1041 (10th Cir.1990), cert. denied, 111 S.Ct. 2064 (1991) ("As a member of the ongoing conspiracy, Williams is subject to a sentence calculated on a base offense level determined by reference to the actual quantity of drugs involved in the conspiracy provided that she knew or should have known that at least such amount was involved."). As in Matthews, the evidence strongly suggests the scope of defendant's agreement was more narrow than his sentence would indicate.
 
 III.
 
 16
 Defendant challenges the determination of the district court that he was a "manager" in persuading his longtime friend, defendant Bryant, to drive the rental truck in furtherance of the conspiracy. Mr. Williams argues Mr. Bryant must have been a "participant" for Mr. Williams to be considered a manager under the guidelines. He asserts Mr. Bryant was acquitted of the conspiracy, and thus could not have had the requisite intent to be a "participant" in the criminal enterprise. According to this reasoning, Mr. Bryant could not have been led or managed.
 
 
 17
 We review the district court's determination that Mr. Williams was an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c) using a clearly erroneous standard. United States v. Cox, 934 F.2d 1114, 1126 (10th Cir.1991). We review contested matters of law de novo.
 
 
 18
 Section 3B1.1, Application Note 1, defines "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." Defendant concedes that the burden of proof at sentencing is by a preponderance of the evidence. Defendant also does not deny codefendant Bryant would not have been driving the Ryder truck, or arrested with defendant and the other coconspirators, if not for defendant's actions. Defendant described this role in his Statement of Guilt, summarized in the Presentence Report. (R. III, doc. 254, 6). Defendant objected to the Presentence Report on the ground that he took no part in organizing the offense. The addendum to the Presentence Report states, defendant "admits to control and authority over Bryant, and implies that Bryant's role in the instant offense was minor in comparison to others." (R. III, doc. 254).
 
 
 19
 Defendant's persuasion of his longtime friend, Mr. Bryant, to participate in the criminal enterprise provided sufficient evidence for the district court to have found he "managed" Bryant in his role in the operation. Because the sentencing guidelines expressly state conviction is not necessary to the definition of a participant in the criminal activity, and because the district court may use a preponderance of evidence in sentencing, we conclude the court correctly found defendant was a manager in the meaning of § 3B1.1(c).
 
 
 20
 Defendant asserts "[i]t is obvious, without citing authority, that merely driving a truck partially loaded with furniture from Tucson to El Paso, and subsequently being a passenger therein, is insufficient to establish [requisite criminal] knowledge and intent." (Appellant's Brief in Chief at 27). This ignores that the guidelines are principally concerned with the intent of the manager and his culpability in sweeping others into participation in criminal conduct. That a criminal conviction is unnecessary to qualify as a participant makes this clear.
 
 
 21
 We do not consider the use of information from Mr. Bryant's trial in sentencing Mr. Williams. This information would only be relevant to whether Mr. Bryant was "duped" by the defendant, or whether Mr. Bryant intended to commit the crime. Because the guidelines do not require Mr. Bryant to have been convicted of the conspiracy to be a participant for sentencing purposes, we do not believe the distinction is as important as defendant asserts. We conclude Mr. Williams' own admissions concerning his role in bringing Mr. Bryant into the conspiracy support the district court's holding, and we therefore do not reach defendant's notice argument.
 
 
 22
 We thus REVERSE the court's sentencing decision using the total amount of marijuana in the conspiracy, and hold defendant should only have been sentenced for conspiracy to distribute 678 pounds of marijuana. We REMAND for resentencing on this count at offense level 26. We AFFIRM the district court's finding defendant was a manager or supervisor under U.S.S.G. § 3B1.1(c).
 
 
 
 *
 Honorable Garnett Thomas Eisele, Senior District Judge for the United States District Court for the Eastern District of Arkansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3