5 F.3d 548
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Julio GUERRERO, Defendant-Appellant.
 Nos. 92-4165, 92-4168.
 United States Court of Appeals, Tenth Circuit.
 Sept. 1, 1993.
 
 Before LOGAN, SEYMOUR, and MOORE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Julio Guerrero pled guilty to one count of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. 841(a)(1) and was sentenced to 63 months' incarceration, followed by 3 years of supervised release. Although the district court denied his motion to vacate, set aside, or correct sentence under 28 U.S.C. 2255, it found defense counsel's failure to file a direct appeal of Mr. Guerrero's conviction and sentence required relief. Hence, the district court ordered the Clerk of Court to file a notice of appeal on Mr. Guerrero's behalf. Through this particular jurisdictional lens we have viewed Mr. Guerrero's contentions of error but are stymied by the absence of critical findings of fact to determine the legality of his sentence. We therefore remand for reconsideration of the sentence in light of this order.
 
 
 2
 In June 1990, Los Angeles Postal Police were alerted to a sequence of suspicious mailings after a postal clerk observed a man picking up mail regularly at the express mail window at Los Angeles International Airport. What caught the clerk's attention was the "C Label," airport to airport service, on each of these packages, a designation primarily used by businesses, although the return addresses listed individuals, not firms. Upon investigation, the postal police discovered the person who picked up the packages was Julio Guerrero, also known as Jose Sanchez, and the mailings were all between Salt Lake City and Los Angeles.
 
 
 3
 One such package was intercepted in Salt Lake City and presented to a drug detector dog which positively alerted to it. An Hispanic male later picked it up from the Salt Lake City express mail window. On July 17, 1990, with a federal search warrant in hand, Los Angeles postal inspectors seized and searched another package sent to Jose Sanchez from Lory Vigil in Salt Lake City. The package contained $7,090. Rewrapping the package, postal inspectors returned it to the express window where Julio Guerrero picked it up. Two days later, Salt Lake City inspectors searched a package, bearing one of the return addresses used by Julio Guerrero, and found 253 grams of cocaine and 25 grams of black tar heroin. On the same day as the controlled delivery of this package, state search warrants were served simultaneously in Salt Lake City and Los Angeles. In the search of Julio Guerrero's residence, police recovered a small quantity of tar heroin, a triple beam scale, masking tape, plastic baggies, and postal service express mail receipts from prior mailings to Salt Lake City. Later that day, Mr. Guerrero was arrested.
 
 
 4
 Although preliminary negotiations about cooperation occurred,[2] the agreement to which Mr. Guerrero ultimately pled traded his guilty plea to one count of possession with intent to distribute for a two-level reduction in sentence for acceptance of responsibility. His first contention of error, however, challenges this characterization.
 
 
 5
 Mr. Guerrero insists the government offered to exchange his cooperation for a downward departure under U.S.S.G. 5K1.1.[3] Mr. Guerrero contends, therefore, his plea was not knowingly and voluntarily made because it was premised on the government's promise to recommend a 33-month sentence, not the 51-63 month guideline range from which the court ultimately imposed sentence. The government retorts Mr. Guerrero fully understood the original offer was withdrawn and knew the final plea offer contained no other promise than the two-level reduction for acceptance of responsibility.
 
 
 6
 The transcript of the May 6, 1991 hearing to accept plea preserves the colloquy conducted by the court:
 
 
 7
 THE COURT: 12. The only terms and conditions pertaining to this plea agreement between you and the government are as follows:
 
 
 8
 In exchange for defendant's plea of guilty to Count 1 of the indictment the government will agree that defendant receive the reduction for acceptance of responsibility?
 
 
 9
 MR. GUERRERO: Yes.
 
 
 10
 THE COURT: Mr. Lubeck [prosecutor], is that the only term and condition of the plea agreement?
 
 
 11
 MR. LUBECK: It is, Your Honor.
 
 
 12
 THE COURT: And Mr. Archuleta [defense counsel], that is your understanding as well?
 
 
 13
 MR. ARCHULETA: Your Honor, it is. However, there is a slight caveat, if I could interject.
 
 
 14
 We anticipate as to his brother who is going to trial, we anticipate that my client will testify in that regard, Your Honor....
 
 
 15
 But in my discussions with Mr. Lubeck he has indicated that in the event the co-defendant, Francisco Guerrero, was acquitted by the jury, then, in that event, he would not oppose my motion that he be sentenced at the low end of the guidelines.
 
 
 16
 THE COURT: Is that correct, Mr. Lubeck?
 
 
 17
 MR. LUBECK: That is correct, Judge.
 
 
 18
 THE COURT: All right. Very well. And that is Mr. Guerrero's understanding as well?
 
 
 19
 MR. ARCHULETA: Yes, it is, Your Honor.
 
 
 20
 MR. GUERRERO: Yes.
 
 
 21
 Mr. Guerrero's brother, codefendant Franscisco Guerrero, later entered a plea as well. As represented by the government, no agreement bound the parties other than the one to which Mr. Guerrero pled.
 
 
 22
 At the hearing, neither Mr. Guerrero nor his counsel expressed any disagreement, confusion, or surprise with the court's statement of the agreement. Moreover, the court advised Mr. Guerrero during the hearing it was not obligated to follow the government's sentencing recommendation or enforce the plea if a violation occurred. Mr. Guerrero offers no evidence of threats or deception to counter the record. Nor can he transform a plea offer that has been withdrawn into a binding promise. Mabry v. Johnson, 467 U.S. 504, 510 (1984). Consequently, Mr. Guerrero's challenge to the plea agreement lacks merit.
 
 
 23
 Mr. Guerrero next contends the court erred in increasing his sentence four levels under U.S.S.G. 3B1.1. Before sentence was imposed, the court entertained argument on Mr. Guerrero's objection to the four-level increase proposed for his role in the offense. While the government agreed there were not five participants in the drug operation, it suggested the "criminal activity ... was otherwise extensive."[4] Nevertheless, the court decided the four-level increase was justified. It stated:
 
 
 24
 Although there were not as many involved as the manual outlines for identifying an aggravating role, that is there were not five or more participants, there are other factors that in the Court's view justify a finding that this offense was otherwise extensive. And I have stated already the number of mailings, the amount of money that the defendant received and others who were being directed by him as curriers [sic]. And that will be the finding of the Court regarding that.
 
 
 25
 Mr. Guerrero contends these findings are inadequate to support a four-level increase in his offense level. We agree.
 
 U.S.S.G. 3B1.1 states in part:
 
 26
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 27
 (a) If the defendant was an organizer or leader of
 
 
 28
 a criminal activity that involved five or more
 
 
 29
 participants or was otherwise extensive, increase by 4 levels.
 
 
 30
 Before the sentencing court decides a 3B1.1(a) enhancement is proper, it must make two findings of fact. First, it must find defendant is an organizer or leader; and second, that the criminal activity involved five or more participants or was otherwise extensive. United States v. Adipietro, 983 F.2d 1468, 1473 (8th Cir.1993). The Application Notes caution defendant's title, for example, kingpin or boss, is not controlling.
 
 
 31
 Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 32
 U.S.S.G. 3B1.1, comment. (n. 3).
 
 
 33
 We have underscored these factors in deciding whether defendant is an organizer or leader. In United States v. Reid, 911 F.2d 1456, 1464 (10th Cir.1990), cert. denied, 498 U.S. 1097 (1991), we stated, "Key determinants of the applicability of 3B1.1 are control or organization." We relied on United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir.1990), which stated, "the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms organizer, leader, manager and supervisor, each of which suggests the presence of underlings or subordinates." 911 F.2d at 1464. To decide whether a participant is "controlled" by defendant under 3B1.1(a), we stated, "the government must prove at least an interdependence between the defendant and the ... [other] that would support an inference that the ... [other] is answerable to the defendant." We further cautioned, "Merely because a crime is extensive (several purchases and sales of drugs) does not automatically mean that a defendant organizes or leads...." Id. at 1465.
 
 
 34
 Aside from generally noting "others who were being directed by him," the court made no findings to establish Mr. Guerrero was the organizer or leader of the criminal activity. Nor does the Presentence Report, referenced by the court, fill in this gap, mentioning no facts related to supervision or recruiting or organizing to support the increase. We, therefore, cannot review the factual basis upon which the court was required to position the four-level increase. Against the thin though not clearly erroneous evidence upon which the district court decided the activity was "otherwise extensive," we find the absence of this first critical finding even more significant.
 
 
 35
 We therefore REMAND for the district court to reconsider the sentence and make the required findings under U.S.S.G. 3B1.1(a).
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [2]
 According to the government, an earlier offer resulting in a guideline range of 33-41 months was withdrawn before it was accepted or acted upon. The government represented to the district court it withdrew the offer upon finding Mr. Guerrero more culpable than first believed and becoming concerned he would not offer credible testimony in his brother's trial
 3 U.S.S.G. 5K1.1 states in part:
 Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
 (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; ...
 
 
 [4]
 Counsel stated:
 I don't argue that it was [extensive] or it wasn't. I think the Court can gather that from the report.
 There were a number of mailings here. The only one the government can clearly prove beyond a reasonable doubt was drugs was the last package that was opened....
 I mean, as far as the government's position, we don't say it was extensive and we don't say it wasn't. But I am sure the Court is aware that there were a number of mailings similar to this. We can't show they were all drugs....
 I think those facts are reasonably well--or very well laid out in the pre-sentence report. And I submit to the Court that if [sic] is extensive then he should receive the four points. If it isn't he should only get a two.